**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | | |
|---|---|---|
| HORACIO RANGEL CARDENAS,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER BULLOCK,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:26-cv-03315-TLP-tmp |

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Petitioner Horacio Rangel Cardenas, a noncitizen detained in the West Tennessee Detention Center in Mason, Tennessee, petitions for a Writ of Habeas of Corpus under 28 U.S.C. § 2241. (ECF No. 1.) Petitioner specifically filed a Verified Emergency Petition for Writ of Habeas Corpus ("Petition"). (*Id.*)

In the Petition, he states that the U.S. Immigration and Customs Enforcement ("ICE") has abruptly detained him and kept him in "an administrative black hole" by failing to file the Notice to Appear with the Executive Office for Immigration Review, refusing to issue a custody determination, and declining to start a removal proceeding. (*Id.* at PageID 1–2.)

The Court ordered Respondent to show cause why the Writ should not be granted. (ECF No. 4.) Respondent responded and Petitioner replied. (ECF Nos. 6, 7.) For the reasons below, the Court **GRANTS** the Petition and **ORDERS** Petitioner's immediate release.

## BACKGROUND

Petitioner is a noncitizen and "twenty-five-year continuous resident of Tennessee" with three U.S. citizen children. (ECF No. 1 at PageID 1.) The U.S. Immigration and Customs

Enforcement ("ICE") detained Petitioner on October 2, 2026, after he was pulled over by local law enforcement while driving in Jackson, Tennessee. (*Id.* at PageID 2.)

While Respondent "purportedly served a Notice to Appear ('NTA')" on Petitioner, Respondent "intentionally failed and refused to file the NTA with the Executive Office for Immigration Review ('EOIR')." (*Id.*) Respondent has attached the NTA as an exhibit. (ECF No. 6-1.) That document orders Petitioner to appear before an Immigration Judge on December 4, 2026. (*Id.* at PageID 24.) As far as Petitioner knows, "no removal proceedings are currently pending against Petitioner anywhere in the United States, leaving him trapped in an administrative limbo where no court possesses jurisdiction to grant him bond." (ECF No. 1 at PageID 2.)

Petitioner claims that Respondent has "failed to issue a formal Notice of Custody Determination (Form I-286) or set an administrative bond." (*Id.* at PageID 2.) So he asserts that Respondent is "intentionally withholding an administrative custody decision" to detain Petitioner indefinitely without statutory authority while foreclosing his right to seek bond redetermination under 8 U.S.C. § 1226(a). (*Id.* at PageID 2–3.)

Respondent has provided no documentation showing that it conducted an initial custody determination. And at the time of this Order, ICE had still not docketed Petitioner's case with the EOIR. (*See* ECF No. 1 at PageID 3 (listing A-Number).) Nor does Petitioner appear on the EOIR's Automated Case Information System.[1]

After Petitioner filed his Verified Emergency Petition, the Court entered an Order directing Respondent to show cause why the Petition should not be granted. (ECF No. 4 at PageID 17.) The Court also ordered Respondent under the All Writs Act, 28 U.S.C. § 1651, not

[1] The Court takes judicial notice of this fact. *See* Fed. R. Evid. 201.

to remove Petitioner from the Western District of Tennessee while his Petition is pending. (*Id.* at PageID 17–18.)

In response to the Order to Show Cause, Respondent explained that the Court should dismiss the Petition because Petitioner has failed to exhaust his administrative remedies in Immigration Court. (ECF No. 6 at PageID 20.) And he argues that Petitioner "simply seeks to side-step" having to make a bond request or a custody determination request before an Immigration Judge. (*Id.* at PageID 23.)

Petitioner's Reply emphasizes that in *Funez Charco v. Bullock* this Court resolved "this identical legal question on indistinguishable facts just fifteen days before" Respondent's Response. (ECF No. 7 at PageID 32; *see also* No. 2:26-cv-03028-TLP-tmp, ECF No. 13 at PageID 90–91.) As he notes, the Court decided that "where ICE detains an interior-apprehended noncitizen under 8 U.S.C. § 1226(a) and fails to issue an initial custody determination within forty-eight hours under 8 C.F.R. § 287.3(d), Respondent effectively blocks Petitioner from using internal administrative procedures to seek a bond hearing" under *Lopez-Campos v. Raycraft*. (ECF No. 7 at PageID 32–33 (citation modified); *see also Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026).)

The Court agrees and concludes that because Petitioner has not received an initial custody determination by ICE, he cannot exhaust his administrative remedies by seeking a bond hearing. Failure to provide Petitioner with a bond hearing violates his right to procedural due process under *Lopez-Campos*. *See Lopez-Campos*, 175 F.4th at 734 (affirming district courts' determination that "detention of Petitioners without bond under § 1226(a) was a deprivation of liberty that violated Petitioners' due process rights"). Because the Court finds that Respondent is

detaining Petitioner in violation of his due process rights, the Court will not address Petitioner's other arguments.

**ANALYSIS**

Federal courts may grant a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). These protections apply to noncitizens as well as citizens. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("the Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent" (citation modified)). "Noncitizens who have 'passed through our gates, even illegally, may be expelled only after proceedings conforming to the traditional standards of fairness encompassed in due process of law.'" *Lopez-Campos*, 175 F.4th at 732 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

On May 11, 2026, the Sixth Circuit decided *Lopez-Campos*, affirming that a noncitizen who has spent "significant time . . . within the interior of the United States," and who has not committed an offense rendering them ineligible under § 1226(c), may not be detained without an individualized bond hearing. *Id.* at 734. "To hold otherwise would subject long-term law-abiding residents in the United States . . . to the hardship of mandatory detention without due process." *Id.* at 735. And Respondent acknowledges that *Lopez-Campos* applies to Petitioner's case. (ECF No. 6 at PageID 20.)

Respondent has blocked Petitioner from using administrative procedures to seek a bond hearing under § 1226(a). (ECF No. 1 at PageID 2–3 ("Respondent has failed to issue a formal Notice of Custody Determination" or "set an administrative bond," so Petitioner cannot seek bond redetermination before an Immigration Judge); *see also* ECF No. 7 at PageID 34.)

Once ICE takes a noncitizen into custody, it must determine "whether the alien will be continued in custody or released on bond or recognizance" and whether to issue an NTA. 8 C.F.R. § 287.3(d). Without extraordinary circumstances, ICE must make its determination within forty-eight hours of the arrest. *Id.* An Immigration Judge has jurisdiction to conduct a bond hearing only after ICE makes this custody determination. *See id.* § 1003.19(a). That is, a bond hearing in front of an Immigration Judge is a "redetermination" of ICE's initial custody determination.[2] *See* 8 C.F.R. § 1003.19(b). And on Petitioner's uncontested account, Respondent barred him from seeking a redetermination because it issued no initial custody determination in the first place. (*Compare* ECF No. 1 at PageID 2–3, *with* ECF No. 6 at PageID 20–23.)

By failing to issue Petitioner a Notice of Custody Determination, Respondents have prevented Petitioner from obtaining a bond hearing to which he is entitled under *Lopez-Campos*. So Respondent's detention of Petitioner violates his right to procedural due process. *See Lopez-Campos*, 175 F.4th at 734.

Having determined that Respondent violated Petitioner's procedural due process rights, the Court must determine the adequate remedy. Other district courts have ordered Respondent to release a petitioner immediately after Respondent denied them a bond hearing. *See Perdomo Amaya v. Bullock*, No. 3:26-cv-01341, 2026 WL 2873809, at *2 (M.D. Tenn. Sept. 24, 2026) ("[T]he court finds that the Petitioner's detention violated his due process rights and that a bond hearing at this point could not cure that blatant constitutional violation."); *see also Castro*

[2] In fact, Respondent even describes this process in its Response: "Initially, the bond is set by DHS. Upon the alien's request, an Immigration Judge may conduct a 'bond hearing,' in which the Immigration Judge has the authority to redetermine the amount of bond set by DHS." (ECF No. 6 at PageID 21 (emphases removed) (quoting Exec. Off. of Immigr. Rev., Immigration Court Practice Manual § 8.3(a)).)

*Cabrera v. Bullock et al.*, No. 3:26-cv-01322, ECF No. 11 at PageID 68 (M.D. Tenn. Sept. 21, 2026) (using its discretion to find immediate release justified after the Government failed to provide petitioner with a Notice of Custody Determination). The Court agrees with their reasoning. Ordering a bond hearing here would not cure Respondent's unconstitutional detention of Petitioner.

## CONCLUSION

The Court therefore **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** Petitioner's immediate release from custody.

**SO ORDERED**, this 22nd day of October, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE